UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
STEFAN JEREMIAH,

               Plaintiff,

       -against-

DBG MEDIA PUBLISHERS OF OUR TIME
PRESS INCORPORATED,

              Defendant.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
25 CV 1822 (AMD) (CLP)

**POLLAK**, United States Magistrate Judge:

On April 2, 2025, plaintiff Stefan Jeremiah ("plaintiff" or "Jeremiah") commenced this action against defendant DBG Media Publishers of Our Time Press Incorporated ("defendant" or "DBG Media"), alleging violations of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, arising out of the unauthorized reproduction and public display on defendant's website and social media account of a copyrighted photograph of New York City Mayor Eric Adams, in which plaintiff Jeremiah owns the rights and licenses for various uses, including online and print publications (the "Photograph"). (Compl.[1]). Currently pending before this Court is plaintiff's Motion for Default Judgment, filed July 10, 2025 (the "Motion") (ECF No. 13), which was referred to the undersigned for a Report and Recommendation. (Electronic Order, dated July 11, 2025).

BACKGROUND

Plaintiff Jeremiah is a professional photographer who owns photographs which he commercially licenses for a fee. (Compl. ¶ 11). He has obtained active and valid copyright registrations from the United States Copyright Office ("Copyright Office") covering many of plaintiff's photographs; others are the subject of pending applications. (Id. ¶ 13). Plaintiff

---

[1] Citations to "Compl." refer to the plaintiff's Complaint, filed April 2, 2025. (ECF No. 1).

alleges that his photographs are original, creative works and that he has invested significant time and money in building his portfolio.  (Id. ¶¶ 12, 14).  Plaintiff alleges that he first published the Photograph on January 24, 2022, by commercially licensing it to the New York Post for display and public distribution. (Id. ¶¶ 15, 16).  On April 2, 2022, the Photograph was registered by the Copyright Office under Registration No. VA 2-297-780.  (Id. ¶ 18; Jeremiah Decl., [2] Ex. 2).

According to the Complaint, defendant DBG Media is a New York corporation with its principal place of business located at 257 Nostrand Avenue, Suite 506, in Brooklyn, N.Y. (Id. ¶ 7).  Defendant is the registered owner and operator of the website www.ourtimepress.com (the "Website"), which plaintiff alleges "is a key component of Defendant's popular and lucrative commercial enterprise."  (Id. ¶¶ 3, 20-22).  Plaintiff alleges that defendant is responsible for the content shown on the Website and that the Website contains paid advertisements from which defendant profits.  (Id. ¶ 20).

Plaintiff also alleges that defendant and owns and operates a social media account on www.facebook.com, known as "@ourtimespress" (the "Account").  (Id. ¶ 4).  According to plaintiff, defendant is the registered owner and operator of the Account, responsible for its content, and that the Account is used to advance defendant's commercial enterprise. (Id. ¶¶ 24-26).  Plaintiff alleges that defendant has failed to implement adequate internal policies to verify copyright ownership before use or that defendant's policies, if any, are systemically ignored, demonstrating a "willful, recurring disregard for copyright compliance."  (Id. ¶¶ 27, 28).

According to plaintiff, defendant, without permission or authorization from plaintiff, copied and displayed plaintiff's original Photograph depicting Mayor Adams at a press conference on its Website as part of an online story. (See URL:  https://ourtimepress.com/mayor-

---

[2] Citations to "Jeremiah Decl." refer to the Declaration of Stefan Jeremiah in Support of Motion for Default Judgment, filed July 10, 2025 (ECF No. 16).

adams-on-solving-nycs-crime-problem/  ("Infringement No. 1")). (Id. ¶¶ 2, 5, 30-38, Ex. 2). Plaintiff further alleges that defendant, without permission or authorization, also copied and displayed the Photograph on its Facebook Account as part of an online post at URL: https//www.facebook.com/ourtimepress/posts/4932189103529618 ("Infringement No. 2").  (Id. ¶ 32, Ex. 2).

Plaintiff claims that he first observed the Infringements on April 11, 2022.  (Id. ¶ 34). Plaintiff alleges that because the Infringements include a URL, for a fixed tangible medium of expression, it was capable of being communicated for more than a transitory period and therefore constitutes a "specific infringement."  (Id. ¶ 36).  Plaintiff alleges that defendant was aware of facts and circumstances regarding the Infringements and cannot claim lack of awareness of the infringing activities.  (Id. ¶ 39).  Thus, plaintiff contends that defendant engaged in the Infringements knowingly, having the legal ability to control the Website and Account, and that the Infringements increased traffic to the Website, causing defendant to realize an increase in its revenues.  (Id. ¶¶ 40-44).  Plaintiff further alleges that a large number of people have viewed the unlawful copies of the Photograph, causing harm to plaintiff's potential market for the Photograph.  (Id. ¶¶ 45, 48).

On March 14, 2023, plaintiff through counsel served a letter seeking to address the issue of defendant's infringement of plaintiff's copyrights, but defendant not only failed to respond but continues to infringe on plaintiff's work.  (Id. ¶¶ 49-51).  Plaintiff thereafter commenced this action seeking an award of actual damages and disgorgement of defendant's profits or, in the alternative, statutory damages for willful copyright infringement, pursuant to 17 U.S.C. § 504, and injunctive relief pursuant to 17 U.S.C. § 502.  (Compl. ¶¶ 60-62).

When defendant failed to answer or respond to the Complaint,[3] a default was entered by the Clerk of Court on June 30, 2025 (ECF No. 12), and thereafter, plaintiff moved for default judgment on July 10, 2025.  (ECF No. 13).  The motion was referred to the undersigned by the Honorable Ann M. Donnelly on July 11, 2025.  (Electronic Order, dated July 11, 2025).

DISCUSSION

I.    <u>Default Judgment</u>

A.    <u>Legal Standard</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for the entry of a default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u> <u>id.</u>; <u>see also</u> Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b).  Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a referral to determine the question of damages.  <u>See</u> Fed. R. Civ. P. 55(b)(2).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has

---

[3] Defendant was duly served on April 16, 2025, by service on the New York State Secretary of State, authorized to accept service on behalf of defendant. (ECF No. 6; Exhibit 2 to the Declaration of Dina Nouhian, Esq., dated July 10, 2025 (ECF No. 15-2).

4

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Furthermore, "[Rule] 55(b) states that a judgment by default 'may' be entered under specified circumstances, not that it must." See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.

The Court has significant discretion to consider several factors in deciding whether to grant a default judgment, including: (1) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"), cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages), adopting report and recommendation, id. at *1–9; (2) "'whether the grounds for default are clearly established;'" and (3) "'the amount of money potentially involved.'" Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2

(S.D.N.Y. Oct. 19, 1992) (quoting 10 Charles A. Wright, et al., Federal Practice and Procedure §

2685, at 423, 425–26 (2d ed. 1983)).  The more money involved, the less justification for

entering the default judgment.  Id.

Additionally, "'the Court may consider whether material issues of fact remain, whether

the facts alleged in the complaint state a valid cause of action, whether plaintiff has been

substantially prejudiced by the delay involved, and whether the default judgment may have a

harsh effect on the defendant.'"  Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp.

2d 385, 393 (S.D.N.Y. 2012) (quoting Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465,

2012 WL 1416924, at *2 (E.D.N.Y. Mar. 15, 2012)), adopting report and recommendation, id. at

389–404; see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (explaining

that under Fed. R. Civ. P. 55(b)(2) "a district court has discretion . . . to require proof of

necessary facts and need not agree that the alleged facts constitute a valid cause of action"); 10A

Charles A. Wright, et al., Federal Practice and Procedure § 2685 (4th ed. 2008) (Apr. 2023

update) (discussing the aforementioned factors).

The burden is on the plaintiff to establish his entitlement to recovery.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506

U.S. 1080 (1993).  When a default judgment is entered, the defendant is deemed to have

admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to

damages.  Id.  Thus, for the purposes of an inquest, the court "accept[s] as true all of the factual

allegations in the complaint, except those claims relating to damages," and the plaintiff is

"entitled to all reasonable inferences from the evidence offered."  Au Bon Pain Corp. v. Artect,

Inc., 653 F.2d at 65.  While "the court must ensure that there is a basis for the damages specified

in a default judgment, it may, but need not, make the determination through a hearing;" instead,

"the court may rely on detailed affidavits or documentary evidence." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, it is beyond dispute that the defendant is in default since it failed to answer or otherwise respond to plaintiff's complaint. Moreover, defendant has failed to respond to plaintiff's motion for default judgment, and to this Court's Order inviting him to submit damages papers and/or request an inquest hearing. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1–2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for an entry of default after "fail[ing] to submit an answer or otherwise respond to the complaint"). Perhaps more important, defendant has failed to retain counsel. As a corporate entity, DBG Media Publishers of Our Time Press Incorporated may not appear in federal court without counsel. See United States ex rel. Reliable Constr. PM, Inc. v. Land Frog, Inc., No. 13 CV 7351, 2015 WL 740034, at *3 (E.D.N.Y. Feb. 20, 2015).

Given the amount of time that has passed since the cease and desist was sent in March 2023 and since default was entered in July 2025, there is no reason to delay any further. The defendant has been afforded more than adequate opportunity to obtain counsel and to respond to the plaintiff's claims; instead, it has chosen not to take any action. Accordingly, in light of defendant's apparent lack of interest in participating in these proceedings, the Court proceeds to consider plaintiff's motion for default judgment.[4]

---

[4] It should also be noted that the amount of money involved in this case is not great. Therefore, unlike cases with millions of dollars potentially at stake, here, the Court does not hesitate before entering default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

B.    Entry of Default Judgment

Plaintiff alleges a violation of the Copyright Act, 17 U.S.C. §§ 101, et seq.  The

Copyright Act is the principal statute protecting against copyright infringement.  "The objective

of copyright protection is to encourage the creator of an original work in a medium of expression

. . . by giving the creator the exclusive right 'to reproduce' the work, 'to prepare derivative

works,' 'to distribute copies or phonorecords,' 'to perform' the work, and 'to display' the work."

Warner Bros., Inc. v. Dae Rim Trading, Inc., 677 F. Supp. 740, 760 (S.D.N.Y. 1988) (quoting 17

U.S.C. § 106).  Although the word "counterfeit" never appears in the Act, Section 501(a) of the

Copyright Act proscribes the unauthorized reproduction and copying of works of an owner

holding an exclusive copyright in an original work of authorship.  17 U.S.C. § 501(a); see Reed

Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010).

Among the rights conferred upon the holder of a copyright are the exclusive rights to

engage in and to authorize the reproduction of the copyrighted work in copies, 17 U.S.C. §

106(1), to prepare derivative works based on the copyrighted work, 17 U.S.C. § 106(2), and to

distribute copies of the copyrighted work to the public by sale, rental, lease, or other transfer of

ownership.  17 U.S.C. § 106(3); see Microsoft Corp. v. Harmony Computs. & Elecs., Inc., 846 F.

Supp. 208, 210–11 (E.D.N.Y. 1994).

It is well established that in order to prove the elements of a copyright infringement

action, a plaintiff must show:  "'(i) ownership of a valid copyright; and (ii) unauthorized copying

of the copyrighted work.'"  Ferrarini v. Irgit, No. 21 CV 597, 2022 WL 1739725, at *1 (2d Cir.

May 31, 2022) (summary order) (quoting Sohm v. Scholastic Inc., 959 F.3d 39, 48 (2d Cir.

2020)), cert. denied, 143 S. Ct. 570 (Mem.) (2023); accord Feist Publ'ns, Inc. v. Rural Tel. Serv.

Co., 499 U.S. 340, 361 (1991) (explaining that "[t]o establish infringement, two elements must

be proven:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the

8

work that are original").  "'The word copying is shorthand for the infringing of any of the copyright owner's [] exclusive rights described in § 106.'"  Malibu Textiles, Inc. v. Sentimental NY, No. 14 CV 2576, 2016 WL 3620787, at *5 (S.D.N.Y. June 28, 2016) (internal quotation marks omitted) (quoting Arista Records, LLC v Doe 3, 604 F.3d 110, 117 (2d Cir. 2010)).  Under the Act, "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright or right of the author, as the case may be."  17 U.S.C. § 501.

　　Turning to the first element required to establish a claim for infringement, courts in this Circuit have held that "'[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright.'"  MerchDirect LLC v. Cloud Warmer, Inc., No. 17 CV 4860, 2019 WL 4918044, at *7 (E.D.N.Y. Sept. 30, 2019) (quoting PaySys Int'l, Inc. v. Atos Se, Worldline SA, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016)).  In this Circuit, courts have found that the registration number is sufficient to satisfy the plaintiff's burden to demonstrate ownership of a valid copyright in the context of a default.  See Lowery v. Fire Talk LLC, No. 19 CV 3737, 2020 WL 5441785, at *2 (E.D.N.Y. June 29, 2020) (noting that "courts in this Circuit have accepted a registration number only to satisfy [the ownership of a valid copyright] prong in default judgment cases" and citing cases), report and recommendation adopted, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020); see also Stokes v. Hombres Lounge, Inc., No. 19 CV 3434, 2020 WL 9814097, at *3 (E.D.N.Y. Oct. 7, 2020), report and recommendation adopted, (E.D.N.Y. Nov. 20, 2020).

　　The Copyright Act provides that "the certificate of [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright."  17 U.S.C. § 410(c); see also CJ Prods. LLC v. Snuggly Plushez LLC,

809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011); Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003), reconsideration denied, 218 F.R.D. 296 (S.D.N.Y. 2003). The presumption of validity is rebuttable, and it is the defendant's burden to prove the invalidity of the copyright. See Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997), cert. denied, 522 U.S. 908 (1997).

Here, plaintiff has alleged that he is the owner of a valid copyright for the Photograph, with the effective date of April 2, 2022. (Compl. ¶ 18; see also Jeremiah Decl., Ex. 2). Plaintiff has submitted the Certificate of Registration for the copyright from the United States Register of Copyrights, which satisfies the ownership of the copyright by plaintiff. (Jeremiah Decl., Exs. 1, 2). See Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 51 (2d Cir. 2003) (providing that the certificate of registration is prima facie evidence of ownership). In addition, plaintiff has submitted his Declaration, attesting to the ownership of the copyright, the process by which his photographs are created and prepared for licensure to various media outlets, and the fact that his photographs are "original, creative expressions" for which he is solely responsible for making all artistic choices. (Jeremiah Decl. ¶¶ 5-7). Plaintiff further states that he "regularly seek[s] to register [his] photographs for copyright protection," with the Copyright Office. (Id. ¶ 4).

Since defendant has chosen not to participate in this action and plaintiff's allegation that it holds a valid copyright in the Photograph has not been challenged, the Court finds that plaintiff has sufficiently alleged ownership of a valid copyright in the Photograph and supported that allegation with a copy of the copyright registration, sufficient to serve as prima facie evidence of the copyright's validity. Therefore, the Court finds that the plaintiff has satisfied the first element required to establish a claim for infringement.

With respect to the second element needed to establish an infringement claim, plaintiff

must show that "'(1) the defendant has actually copied the plaintiff's work; and (2) the copying

is illegal because a substantial similarity exists between the defendant's work and the protectable

elements of plaintiff's [work].'" CJ Prods. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d at

144 (quoting Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001) (finding that

plaintiffs had demonstrated a likelihood of success on the merits with respect to their

infringement claim where "[a] visual examination of the products at issue . . . reveals they are

virtually identical")).

Here, plaintiff has alleged that he observed his Photograph displayed on defendant's

Website as part of an online story dated January 28, 2022, relating to Mayor Adams.  (Jeremiah

Decl. ¶ 18).  According to plaintiff, the article displayed under the Photograph appears to have

been copied from a CNN article authored several days earlier.  (Id.)  Plaintiff further states that

defendant not only displayed the Photograph on its Website, but also displayed it on defendant's

Facebook Account.  (Id. ¶¶ 18, 19, Ex. 3; Compl. ¶ 32, Ex. 2).  Plaintiff asserts that the two

Infringements are "exact copies of [his] original Photograph" which was copied, stored and/or

displayed on the Account and Website.  (Jeremiah Decl. ¶ 20).  Plaintiff further represents that

he did not grant defendant a license to use the Photograph, nor did he assign any rights to

defendant.  (Id. ¶ 21).  Plaintiff has provided evidence of infringement through the Declaration

of Mr. Jeremiah, and by attaching copies of the plaintiff's Photograph and of the Infringements

to the pleadings.  (Compl. Exs. 1, 2; Jeremiah Decl. Exs. 1, 3).  Plaintiff alleges that the

Infringements demonstrate defendant's unauthorized copying of the copyrighted work, and the

Court can perceive no meaningful difference between the two.  By failing to participate in this

action, defendant has conceded this element of plaintiff's copyright infringement claim.  See

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  Thus, plaintiff has

satisfied the second element necessary for demonstrating infringement.

Moreover, the allegations in the Complaint are sufficient to establish that the Photograph

is "original."  In the Complaint, plaintiff alleges that his photographs are "original, creative

works."  (Compl. ¶¶ 2, 14, 16-19, 33, 54; see also Jeremiah Decl. ¶¶ 4-6).  According to plaintiff,

the Photograph is the result of his own creative process.  (Id. ¶ 17).  See Renna v. Queens

Ledger/Greenpoint Star Inc., No. 17 CV 3378, 2019 WL 1061259, at *3 (E.D.N.Y. Feb. 13,

2019) (holding that plaintiff met the minimal burden of originality because the photos derived

from plaintiff's "choice of timing, location, and subject matter"), report and recommendation

adopted, 2019 WL 1062490 (E.D.N.Y. Mar. 6, 2019).

Accordingly, the Court finds that, based on the undisputed allegations in the Complaint,

defendant is liable for copyright infringement under the Copyright Act for the unauthorized

reproduction of the Photograph.  It is respectfully recommended that plaintiff's motion for entry

of a default judgment be granted with respect to liability.

II.    Damages

A.  Legal Standards

"In general. . . an infringer of copyright is liable for . . .the copyright owner's actual

damages and any additional profits of the infringer . . . ."  17 U.S.C. § 504.  However, the

Copyright Act also allows plaintiffs to sue for "statutory damages" in lieu of actual damages and

profits once an act of infringement has been shown.  17 U.S.C. § 504(a)(2), (c); Island Software

and Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 262 (2d Cir. 2005).  Statutory

damages are available even when there is no evidence of defendant's profit or plaintiff's losses

sustained as a result of the infringement.  See Starbucks Corp. v. Morgan, No. 99 CV 1404, 2000

WL 949665, at *2 (S.D.N.Y. July 11, 2000), report and recommendation adopted (S.D.N.Y.

Aug. 8, 2002). The statute provides for an award in an amount of "not less than $750 or more than $30,000 as the court considers just," for each work where the plaintiff can demonstrate that the copyright has been infringed. 17 U.S.C. § 504(c)(1). "Under the Copyright Act, there is no need for an infringer to act willfully for it to be sanctioned." Island Software and Computer Serv., Inc. v. Microsoft Corp., 413 F.3d at 265. However, when the infringement is willful, enhanced statutory damages ranging to as much as $150,000 may be awarded. 17 U.S.C. § 504(c)(2).

It is well established that plaintiff has the burden to prove damages and establish his entitlement to recovery. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. When a plaintiff elects statutory damages under the Copyright Act, "damages are calculated based on the number of copyrighted works and . . .not on the number of incidents of infringement." Fitzgerald v. CBS Broadcasting, Inc., 491 F. Supp. 2d 177, 182 (D. Mass. 2007) (citing Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 194 (1st Cir. 2004)). The Second Circuit has outlined a number of factors for courts to consider in determining the appropriate measure of damages:

> (1) The infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Bryant v. Media Right Prods., 603 F.3d 135, 144 (2d Cir. 2010), cert. denied, 562 U.S. 1064 (2010).

In addition, a plaintiff must prove willfulness before he is entitled to an enhanced award of statutory damages. To prove willfulness under the Copyright Act, the plaintiff must show that: 1) "defendant was actually aware of the infringing activity," or 2) "defendant's actions

13

were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  Island Software and Computer Serv., Inc. v. Microsoft Corp., 413 F.3d at 263; see also Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001) (holding that willfulness "means that the defendant recklessly disregarded the possibility that its conduct represented infringement" (internal quotation marks omitted)).

      B.    Analysis

           1.    Statutory Damages

Here, plaintiff seeks an award of $30,000 for the defendant's display of the Photograph on its Website and on its Account.  (Jeremiah Decl. ¶ 32).  Although he does not seek enhanced damages, plaintiff argues that defendant's conduct was willful because even if defendant did not know that the Photograph belonged to plaintiff, "it had every reason to believe that the rights to the Photograph were owned by someone other than itself."  (Id. ¶ 27).

Statutory damages and attorney's fees are not available if the infringement of a (1) "copyright in an unpublished work commenced before the effective date of its registration" or (2) the "infringement . . . commenced after first publication of the work and before the effective date of its registration. . . ."  17 U.S.C. § 412.  Plaintiff alleged in the Complaint that the effective date of registration of the Photograph was April 2, 2022.  (Compl. ¶ 18).  Since the alleged infringement occurred as part of an online story displayed on defendant's Website dated January 28, 2022—prior to the effective date of registration—the plaintiff needs to establish that the date of first publication was prior to the infringement in order to fall within subsection (1) of Section 412.  Plaintiff states that he first published the Photograph on January 24, 2022. (Compl. ¶ 15; Jeremiah Decl. ¶ 8).

Thus, plaintiff has established that because the first publication of the Photograph occurred on January 24, 2022, and the alleged infringement occurred thereafter on January 28, 2022, he would be entitled to statutory damages and fees under the Copyright Act.

Defendant has failed to appear in this action and failed to raise any opposition to plaintiff's claims. Even if defendant had argued that it did not act willfully and is "an innocent infringer" under 17 U.S.C. § 504(c)(2), which would preclude the Court from awarding statutory damages, any such argument would be objectively unreasonable on the merits, given that defendant, as a news organization, is charged with knowledge of U.S. Copyright law. Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (2d Cir. 1983). Not only should defendant, as a news organization, be alert to the potential copyright issues surrounding the posting of items on its website, see Van Der Zee v. Greenidge, No. 03 CV 8659, 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006), but defendant's failure to take steps to ensure that the copyright laws were being followed constitutes reckless disregard of its responsibilities.[5] Accordingly, the Court finds that defendant has failed to raise a valid defense to an award of statutory damages pursuant to 17 U.S.C. § 504(c)(2).

2.      Calculation of Award

Given that defendant has failed to raise any valid defenses by reason of its default, the Court determines that plaintiff is entitled to statutory damages. Since liability for infringement has already been determined, and since plaintiff is not seeking enhanced damages, the Court proceeds to consider the relevant factors in determining the appropriate award of statutory

---

[5] Unlike a defense based on the fair use provision, which states that "the court shall remit statutory damages," a defense based on the "innocent infringer" provision of the Act provides courts with the discretion to reduce statutory damages "to a sum of not less than $200" in the event that "the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). However, in the Second Circuit, "[t]he burden is on the defendants to establish that any infringement was innocent." D.C. Comics Inc. v. Mini Gift Shop, 912 F. 2d 29, 35 (2d Cir. 1990). Given defendant's decision to default in this matter, neither of these defenses are relevant.

damages:  "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."  Bryant v. Media Right Prods., Inc., 603 F.3d at 144.

Under the Copyright Act, statutory damages serve two purposes:  one is compensatory, and the other is punitive to discourage future violations by defendant and others.  Richard Feiner & Co., Inc. v. Passport Int'l Prods., Inc., No. 97 CV 9144, 1998 WL 437157, *2 n.13 (S.D.N.Y. July 31, 1998) (quoting Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc., 807 F.2d 1110, 1117 (2d Cir. 1986)); CJ Prods. LLC v. Your Store Online LLC, No. 11 CV 9513, 2012 WL 2856068, at *3 (S.D.N.Y. July 12, 2012), report and recommendation adopted, 2012 WL 4714820 (S.D.N.Y. Oct. 3, 2012).  The trial court has wide discretion in settling the amount of a statutory damages award.  See Fitzgerald v. CBS Broadcasting, Inc., 491 F. Supp. 2d at 190.  A review of the caselaw reflects a wide range of awards for the infringement of a photograph.  See Burch v. Nyarko, No. 06 CV 7022, 2007 WL 2191615, at *3 (S.D.N.Y. July 31, 2007) (collecting cases), report and recommendation adopted, (S.D.N.Y. July 31, 2007).

With respect to the infringer's "state of mind," courts look to whether the defendant was aware of its infringement yet acted anyway.  See Castillo v. G&M Realty L.P., 950 F. 3d 155, 172 (2d Cir. 2020) (finding that the defendant "was 'willing to run the risk of being held liable for substantial statutory damages rather than to jeopardize his multimillion-dollar luxury condo project'"), cert. denied, 141 S. Ct. 363 (Mem.) (2020).  As noted above, the Court agrees that defendant, as a newspaper, had the responsibility to conduct due diligence and maintain an awareness of applicable copyright laws.  See Fallaci v. New Gazette Literary Corp., 568 F. Supp.

16

at 1173.  Therefore, the Court cannot conclude that defendant had any reasonable excuse to be unaware of its infringement.  Accordingly, the Court finds that the "state of mind" factor weighs in favor of the plaintiff.

With respect to the second and third relevant factors, plaintiff contends that, because he is seeking statutory damages, there is no requirement for him to make a showing of his loss or defendant's profit.  (Pl.'s Mem.[6] at 11, 14–15).  Some courts have taken the position advocated by plaintiff.  See Peer Int'l Corp. v. Max Music & Entm't, Inc., No. 03 CV 0996, 2004 WL 1542253, at * 2 (S.D.N.Y. July 9, 2004), report and recommendation adopted, (S.D.N.Y. Oct. 29, 2004); see also CJ Prods., LLC v. Your Stone Online LLC, 2012 WL 2856068, at *2 n. 4 (holding that a copyright owner may elect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages and the mount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available").  Other courts have held that "it is obviously incumbent upon the plaintiff to submit a record sufficient to support the amount of statutory damages that he is seeking."  Seelie v. Original Media Grp. LLC, No. 19 CV 5643, 2020 WL 136659, at *2 (E.D.N.Y. Jan. 13, 2020); see also Lowery v. Fire Talk LLC, No. 19 CV 3737, 2020 WL 5441785, at *3 (E.D.N.Y. June 29, 2020) (holding that plaintiff "still has the ability — and the responsibility — to present some minimal amount of evidence in support of [the] damages request"), report and recommendation adopted, 2020 WL 5425768 (E.D.N.Y. Sept. 10, 2020).

In this case, plaintiff has not provided the Court with any information as to what his actual licensing fee would have been, nor any suggestion as to what actual damages he may have suffered as a result of defendant's posting of the Photograph.  Plaintiff has not pointed to any of

---

[6] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law filed July 10, 2025.  (ECF No. 14).

the primary factors for determining an appropriate award of statutory damages in his arguments supporting his request.  Indeed, the only information he has provided to assist the Court in determining the appropriate award within the statutory limits of Section 702 is a listing of various cases and the amounts awarded for the violations found therein.  (See Pl.'s Mem. at 15, n.4).  As the court in Seelie v. The Original Media Group LLC, noted, cases "are not evidence, they are legal authorities," and, for every case cited awarding the amounts sought by plaintiff, "there are more cases awarding different amounts. . . ," 2020 WL 136659 at *2, see also Jerstad v. New York Vintners LLC, No. 18 CV 10470, 2019 WL 6769431, at *4 (S.D.N.Y. Dec. 12, 2019) (denying requested award of $10,000, and awarding $2,500 where plaintiff did not explain why the other cases cited were appropriate comparisons and where he had not made much of an effort to support a damages figure), report and recommendation adopted, 2020 WL 58237 (S.D.N.Y. Jan. 6, 2020).

Plaintiff cites several cases awarding damages of $30,000 for the copying and posting of a single photograph, see, e.g., Stokes v. Hombres Lounge, Inc., 2020 WL 9814097 at *6; Verch v. Handsome Serv, Inc., No. 19 CV 6162, ECF No. 15 at 2 (E.D.N.Y. May 18, 2020); Bari v. Ocean Gold Media, LLC, No. 18 CV 5992, ECF No. 22 at 2 (E.D.N.Y. February 25, 2020); but others in the Eastern and Southern Districts of New York have awarded less. See, e.g., Myeress v. Elite Travel Grp. USA, No. 18 CV 0340, 2018 WL 5961424 at *3 (S.D.N.Y. Nov. 14, 2008) (awarding $20,000 for the display of a photograph of South Florida on defendant's travel website, noting that the statutory maximum is often not awarded when there is no evidence of lost revenue); Seelie v. The Original Media Grp. LLC, 2020 WL 136659 at *5–6 (awarding $5,000 in statutory damages); Bass v. Diversity Inc. Media, No. 19 CV 2261, 2020 WL 2765093 at *5 (S.D.N.Y. May 28, 2020) (awarding $5,000).

18

Having reviewed the cases cited by plaintiff, and in the absence of any clearly applicable guidelines from the Second Circuit, the Court finds the analysis performed by the court in <u>Seelie</u> instructive.  In <u>Seelie</u>, the defendant copied the plaintiff's photograph from a licensed publication, removed the credit for the photograph in which the licensee had shown plaintiff's name, and published the photograph on its website without permission.  <u>Seelie v. The Original Media Grp. LLC</u>, 2020 WL 136659 at *1.  In analyzing the relevant factors, the court explained that plaintiff's "respectful refusal" to disclose his usual licensing fee "leads me to draw the inference that it is *de minimis*," noting that other courts had considered a multiplier of a licensing fee in determining a statutory award.  <u>Id.</u> at *4.  The court further noted that plaintiff had made no effort to determine the nature of the defendant's business and its wherewithal to pay a substantial damage award.  <u>Id.</u>  Although, as here, the plaintiff in <u>Seelie</u> argued that defendant's default was relevant to the issue of willfulness, the court's analysis also turned on the removal of the accreditation of the photograph and the fact that, as a publisher, defendant should be familiar with the copyright laws.  <u>Id.</u>  In awarding $5,000, the court in <u>Seelie</u> explained that the most important factor in his analysis as to damages was the plaintiff's withholding of his actual licensing fee, leading the judge to conclude that an award of $5,000 was likely a substantial multiple of the licensing fee and thus would satisfy the dual purposes of awarding statutory damages.  <u>Id.</u> at *5.

As in <u>Seelie</u>, plaintiff here has chosen not to provide any information regarding the revenue lost as a result of the infringement, nor has he provided the licensing fee charged to the New York Post or to anyone else in connection with the specific Photograph, or of other licensing fees charged for his works.  However, by contrast to the facts in <u>Seelie</u>, there is evidence before the Court indicating that not only did defendant post a copy of plaintiff's

Photograph on its Website, it posted a second copy on its Facebook Account, and, according to plaintiff, increased its revenues through publication of the Photograph.

In terms of deterrence, plaintiff has provided a few facts to suggest that a high value award is necessary for deterrence in this case.  Defendant is in the publishing industry, and "in a position to repeat the unauthorized reproduction of copyrighted material."  Bass v. Diversity Inc. Media, 2020 WL 2765093 at *4 (internal quotations omitted).  Plaintiff also argues that, in determining the proper award, the Court should consider the defendant's willfulness as evidenced by its default in this case.  (See Pl.'s Mem. at 14).  Even though plaintiff need not prove willfulness because he does not seek enhanced damages, courts do take willfulness into consideration when determining the amount of the award.  See Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F. 2d 1366, 1381–1382 (2d Cir. 1993) (finding that although "the District Court's award of $15,000 for each work infringed is sustainable with or without a finding of willfulness, we feel obliged to review the challenge to the willfulness finding because it may well have influenced … the amount of the award").  See also Entral Grp. Int'l LLC v. Honey Café on 5th, Inc., No. 05 CV 2290, 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (considering willfulness in determining whether to award enhanced damages).  Here, defendant not only defaulted and failed to respond to the Complaint, but it also ignored plaintiff's pre-litigation communications and continues to store the Photograph on its Website.  (Pl.'s Mem. at 14).  Courts have found that the amount of damages depends on whether the "defendant continued its infringing conduct despite receiving notices to end such activity."  Sadowski v. Render Media Inc., No. 17 CV 9045, 2020 WL 5968668 at *3 (S.D.N.Y. Oct. 8, 2020).

Plaintiff's conduct is also relevant to this analysis.  Here, plaintiff discovered the infringement on April 11, 2022 but waited nearly a year to file the cease and desist letter, which

was sent to defendant on March 13, 2023.  (Compl. ¶¶ 34, 49).  He has also failed to put forward

information about his licensing fee for the Photograph.  This is exactly the type of

"lackadaisical" conduct that courts "weigh especially heavily" in granting statutory damages.

See McDermott v. Kalita Mukul Creative Inc., 757 F. Supp. 3d 301, 319–20 (E.D.N.Y. 2024)

(granting statutory damages "at the very bottom of the statutory range" where, inter alia, plaintiff

waited a year to sue after discovering the infringement and failed to provide information about

his licensing fee for the infringed-upon photograph).

Having considered all of the relevant factors, and balancing plaintiff's own unenthusiastic

pursuit of his rights under the copyright, with evidence that defendant, an entity in the news

business, profited from the infringing conduct, ignored plaintiff's efforts to resolve the issue pre-

suit and continued to maintain the Photograph on its Website and Facebook Account, the Court

respectfully recommends that plaintiff be granted an award in the middle of the range of

statutory damages, in the amount of $15,000.  Assuming the licensing fee is fairly de minimis, an

award of this amount more than adequately compensates plaintiff for any losses he may have

suffered and also serves as a sufficient deterrent to prevent future infringements.

3.    Attorneys' Fees and Costs

Plaintiff also seeks $7,891 in attorneys' fees and $465 in costs, pursuant to 17 U.S.C. §

505.  (Pl.'s Mem. at 25).  Under the Copyright Act, a prevailing party may recover full costs,

including reasonable attorney's fees.  17 U.S.C. § 505.  "Courts have found that compensation,

including attorney's fees and costs, are appropriate where a defendant has defaulted."  Sadowski

v. Render Media Inc., 2020 WL 5968668 at *4 (citation omitted).  In determining an award of

fees, courts consider "(1) the frivolousness of the non-prevailing party's claims or defenses; (2)

the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4)

compensation and deterrence."  Bryant v. Media Right Prods., Inc., 603 F.3d at 144.

21

In support of his application for attorney's fees, plaintiff has submitted the Declaration of Dina Nouhian, an associate at Sanders Law Group (the "Firm"), who graduated from New York Law School in 2012 and was admitted to practice law in New York in 2013. (Nouhian Decl. (ECF No. 15) ¶ 24). Counsel represents that her current hourly rate is $500 per hour. (Id. ¶ 25). The declaration also sets out that Craig B. Sanders, founding member of the Firm, with over 32 years of experience in complex copyright matters, bills at the rate of $750 per hour; senior associate, Jonathan M. Cader has 18 years of experience and bills at the rate of $600 per hour; and associate Frances Lange, admitted to practice in 2013, bills at the rate of $500 per hour. (Id. ¶¶ 27-34). Finally, a paralegal, Julie Busch, performed work on the case, billing at the rate of $150 per hour. (Id. ¶ 36).

The Court finds that these rates to be high compared to the rates awarded to counsel in similar cases in the Eastern District of New York. See Moore v. Rubin, 766 F. Supp. 3d 423, 428 (E.D.N.Y. Feb. 14, 2025) (finding that, "[a]fter an extensive and well-documented discussion of the impact of inflation on the cost of living…the reasonable hourly rates in this district are now $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals"). Given the relative simplicity of the issues and the amount of work presented by this default, which involved researching and reviewing an eight-page complaint, drafting the application for entry of default and drafting the application for default judgment, the Court finds that such a high hourly rate is not justified here. Accordingly, the Court respectfully recommends that Mr. Sanders be awarded fees at the rate of $500 per hour; Mr. Cader at the rate of $400 per hour, Ms. Nouhian and Ms. Lange at the rate of $375 per hour, and Ms. Busch at the rate of $125 per hour.

As for the number of hours expended in connection with this case, counsel's Declaration seeks fees for the 14.3 hours.  (Nouhian Decl., Ex. 4).  Accordingly, the Court finds the total number of hours requested to be reasonable.  It is therefore respectfully recommended that plaintiff be awarded $ 5,487.50 in attorney's fees.

Finally, the Court has discretion to "order a copyright litigant to pay an adversary's court costs."  Johnson v. Magnolia Pictures LLC, No 18 CV 9337, 2019 WL 4412483, at *4 (S.D.N.Y. Sept. 16, 2019).  Plaintiff seeks an award of $465 in costs, representing the $405 filing fee for the case, and $60 in service fees.  Based on the documentation submitted, the Court respectfully recommends that plaintiff be awarded $465 in costs.

<u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that plaintiff be awarded $15,000 in statutory damages, $5,487.50 in attorney's fees, and $465 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       November 4, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York